ANTHONY ANDRELLO, Plaintiff, *v.* NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Defendant.

UNITED STATES OF AMERICA, Appellant, *v.* MILES HOERLE et al., Respondents.

MILES HOERLE et al., Respondents, *v.* NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Defendant.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Plaintiff, *v.* UNITED STATES OF AMERICA, Appellant.

Fourth Department, April 4, 1968.

*Justin J. Mahoney, United States Attorney (David English Carmack,* of the Maryland and District of Columbia Bars admitted on motion *pro hac vice,* of counsel), for appellant.

*Howard D. Seld* for respondents.

BASTOW, J. P. This appeal presents the issue of priority rights between interpleaded defendants — the appellant, United States of America (Government) and respondents, Hoerle and Kowalsky,— to the proceeds of a fund ($8,500) on deposit in court.

On March 15, 1962 plaintiff (Andrello) in the basic action resided in Oneida County and owned realty in Herkimer County. On that date Andrello executed and delivered to respondents a second mortgage on the realty to secure payment of a stated sum. The instrument contained the statutory language (Real Property Law, § 254, subd. 4) that the owner covenanted to keep the buildings insured against loss by fire for the benefit of respondents and would assign and deliver the policies to the mortgagees.

At various dates between February 26, 1964 and March 2, 1965 the Government filed in the offices of the Clerks of Oneida, Herkimer and Madison Counties liens against Andrello for unpaid Federal taxes. The Government concedes that such liens were not filed in the office of the Clerk of the town in Madison County where Andrello then resided.

On April 7, 1964 Nationwide Mutual Fire Insurance Company (Nationwide) issued to Andrello a policy in the amount of $10,000 insuring the buildings on the mortgaged property against loss or damage by fire. The policy contained no provision making loss payable, in whole or in part, to respondents. On August 11, 1964 a dwelling situate on the mortgaged premises was destroyed by fire. The day following the fire an indorsement was added to the policy making loss payable to the respondents and thereafter Andrello assigned his interest in the proceeds of the policy (to the extent of the amount due on the mortgage) to respondents.

After the owner and respondents had commenced separate actions to recover the amount due on the policy, Nationwide brought an interpleader action against them and other defendants whose interests are here irrelevant. Subsequently an order was made on stipulation of all parties that Nationwide should be discharged from further liability upon payment into court of $8,500.

Thereafter the trial court proceeded to decide the respective claims of the remaining interpleaded parties. There was no trial and unfortunately the record contains no agreed statement of facts. The foregoing factual recital is taken from documents made a part of the record on appeal or from the facts set forth in the decision of the trial court. In the absence of objection from any party to this appeal it is assumed that the facts as recited by the trial court are correct.

We discuss at the outset what appears to have been an error of the trial court in deciding the issues presented upon an inapplicable section of the United States Code. This error has been embraced by the parties to the appeal and makes necessary a reconsideration of the basic issues.

Prior to November 2, 1966 the statute (U. S. Code, tit. 26, § 6323) in substance provided that Federal tax liens should not be valid " as against any mortgagee, pledgee, purchaser, or judgment creditor " until notice thereof had been filed. The section further provided that such liens should be filed in the office designated by State law if such designation had been made. Section 240 of the New York Lien Law (prior to its amendment

by chapter 608 of Laws of 1966, eff. July 3, 1966) provided, so far as here material, that outside of the City of New York such filing should be in the town or city where the taxpayer resides. The Government, as stated, concedes that notices of its liens against Andrello were not so filed.

Section 6323 of title 26 of the code was extensively amended, effective November 2, 1966, by Public Law No. 719 (89th Cong., 2d Sess.; tit. I, § 101, subd. [a]; 80 U. S. Stat. 1125). It now provides that until notice shall have been filed a lien is not valid as against "any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor". The enactment also made substantial changes in the requirements for the places of filing notices of lien. As to both real and personal property it is provided that such filing shall be in the one office within the State as designated by State law in which the property subject to the lien is situated. These filing requirements were further refined by the mandate that real property shall be deemed to be situated at its physical location and in the case of personal property at the residence of the taxpayer "at the time the notice of lien is filed."

In the same year our Legislature (L. 1966, ch. 608, eff. July 3, 1966) amended section 240 of the Lien Law to provide that outside of New York City such notices should be filed in the office of the County Clerk where real estate is situated and as to personal property, if the owner is an individual, in the office of the County Clerk where the owner resides.

The trial court based its decision upon an interpretation of the statute (U. S. Code, tit. 26, § 6323) as so amended in 1966. It in substance held that respondents were "the holder(s) of a security interest" within the meaning of that section. Prior to November 2, 1966 the section, of course, contained no such language. The court went on to hold that inasmuch as the notices of lien had been improperly filed (because of the failure to file in the office of the Town Clerk where the taxpayer resided) respondents' "security interest" had priority over the Government's tax liens.

The tax liens with which we are concerned, however, as heretofore stated, were filed in 1964 and 1965 and the propriety of the filings — and the resulting priorities — must be determined in the light of the then applicable statutory provisions. "Statutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears" (*United States* v. *Magnolia Co.*, 276 U. S. 160, 162–163; *Brewster* v. *Gage*,

280 U. S. 327, 337). (See generally 2 Sutherland, Statutory Construction, §§ 3101, 3102.)

It follows that one of the issues to be decided (which the trial court did not pass upon) is whether or not respondents' claim had priority over the liens of the Government in view of the conceded fact that the notices of liens were improperly filed. To so conclude it is necessary to find that respondents were '' mortgagee[s], pledgee[s], purchaser[s], or judgment creditor[s] '' within the meaning of section 6323 of title 26 of the United States Code prior to its amendment in 1966.

We agree in general with the trial court's analysis of the nature of respondents' claim. The policy of fire insurance issued by Nationwide to Andrello was a personal contract which did not attach to the insured property or run with the land. (*Galante* v. *Hathaway Bakeries*, 6 A D 2d 142, 149.) Such a policy containing a clause making loss payable to a named mortgagee '' is not a separate insurance of the debt, but is a separate security for the debt.'' (*Fields* v. *Western Millers Mut. Fire Ins. Co.*, 290 N. Y. 209, 214.) Following the fire respondents had an equitable lien upon the moneys due under the policy even in the absence therein of a provision making loss payable to them. (*Nor-Shire Assoc.* v. *Commercial Union Ins. Co.*, 25 A D 2d 868.) Inasmuch as Andrello (the owner and mortgagor) had obligated himself to provide respondents with such insurance protection, equity will treat the policy as having contained an appropriate mortgagee clause (*Weinreb* v. *M. & S. Bagels*, 44 Misc 2d 537, affd. 23 A D 2d 884; 36 Am. Jur., Mortgages, § 334). It would normally follow that respondents would be entitled to receive their appropriate share of the proceeds of the policy in payment of the mortgage debt.

There remains, however, the issue as to the right of respondents to assert their claim to such equitable lien inasmuch as some of the Government's liens had been filed prior to the date of the fire when respondents' lien came into existence. The Government's notices of lien having been improperly filed, respondents may assert a right paramount to that of the Government only in the event they are found to be mortgagees, pledgees, purchasers or judgment creditors. Clearly, as to the asset in question they were none of these with the possible exception of '' pledgees ''. In passing on this issue we must look to New York law for State law controls in determining the nature of the legal interest which the taxpayer had in the property sought to be reached by the statute. (*Aquilino* v. *United States*, 363 U. S. 509, 513.)

" A pledge is a security interest in a chattel or in an intangible represented by an indispensable instrument, the interest being created by a bailment for the purpose of securing the payment of a debt or the performance of some other duty." (Restatement, Security, § 1.) Subdivision 4 of section 254 of Real Property Law provides that a covenant by a mortgagor relating to fire insurance — such as found in the instrument herein — shall be construed as meaning, among other things, that the mortgagor will obtain such insurance policy and assign and deliver it to the mortgagee who " shall at all time and times, until the full payment of said moneys, have and hold the said policy or policies as a collateral and further security for the payment " of the money secured by the mortgage. This statutory language for assignment and delivery of the policy was not designed to effectuate an absolute assignment carrying with it all of the incidents pertaining to the policy. Its purpose is to provide for further collateral security so that in the event of a fire the mortgagee would be in a position to hold the insurance proceeds as collateral in lieu of the property itself. (*B X Corp.* v. *Ætna Ins. Co.,* 187 Misc. 806, 810 [SHIENTAG, J.], affd. 272 App. Div. 880.)

In *Central Union Bank* v. *New York Underwriters' Ins. Co.* (52 F. 2d 823) the question was presented as to whether or not a mortgagee could assign a bond and mortgage and at the same time deliver to the assignee a fire insurance policy containing a clause making loss or damage payable to the mortgagee. In answering the question in the affirmative the court wrote (p. 824) : " Thus, the owner may not sell the property and transfer the policy to the purchaser along with the title; for the insurer has not agreed to insure the property in the hands of the purchaser nor to assume the hazard involved in his ownership and possession. On the other hand, an assignment, not of the policy itself with its obligations, but of the owner's rights thereunder by way of pledge or otherwise as security for a debt, is held valid, in the absence of express restriction to the contrary; and the reason for this distinction is that such pledge or assignment does not affect the personal relationship, i.e., the ownership of the property by the insured, upon the faith of which the policy has been issued."

Respondents, as mortgagees, were " pledgees " of the fire insurance policy within the meaning of the pre-1966 statutory provision (U. S. Code, tit. 26, § 6323). While the policy did not have incorporated therein a clause providing in the event of loss for payment to respondents and the policy was not physically delivered to them these were obligations that would have been enforced in equity. Thus equity will regard as done what ought

to have been done (*Moncrief* v. *Ross*, 50 N. Y. 431, 436). We conclude that respondents' equitable lien upon the fund takes priority over the imperfectly filed liens of the Government.

The order insofar as appealed from should be affirmed.

GOLDMAN, DELVECCHIO, MARSH and HENRY, JJ., concur.

Order insofar as appealed from unanimously affirmed, with costs.