247 A.2d 94 (1968)
Donald QUIGLEY d/b/a George T. Quigley & Son and Federation Agricultural Credit Corporation
v.
Roger CARON et al.
Supreme Judicial Court of Maine.
October 21, 1968.
Robert L. Jalbert, Fort Kent, for plaintiffs.
James M. Coyne, Caribou, for plaintiff intervenor-appellant.
No attorneys for defendants participated in this appeal.
Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.
WILLIAMSON, Chief Justice.
This appeal from a summary judgment for the plaintiff Quigley is before us on an agreed statement of facts with record prepared under Rule 74(r) M.R.C.P. The controversy between Quigley and the intervenor Federation Agricultural Credit Corporation (Federation) involves the right to the proceeds of fire insurance arising from the destruction of the defendant Caron's crop of potatoes. Neither Caron nor the several fire insurance companies, who have been trusteed by Quigley, have any interest in the outcome of the case.
In 1966 Caron, to secure certain indebtedness, gave security agreements to Federation upon his 1966 crop of potatoes. The potatoes were destroyed by fire in January 1967. The loss of over $13,000 was covered by fire insurance assumed by companies named as trustees. The identification of Federation as an interested party was not disclosed in any of the policies.
In February 1967 Quigley sued Caron in the District Court and recovered judgment of over $8,000. The present action was brought in May 1967 by Quigley against Caron and the several insurance companies as trustees on the judgment in the earlier case. The action was later removed from the District Court to the Superior Court.
For the purpose of the motion for summary judgment, the parties agree upon the facts and offer as the sole issue: "Whether Federation Agricultural Credit Corporation's security agreement creates a continuing security interest in the money due from insurance company for loss resulting from fire, and whether that interest is superior to the lien claimed by Donald Quigley, acquired by virtue of Quigley's trustee action arising out of his suit on a judgment?"
The parties do not dispute that Federation's security interest in the potatoes was properly perfected or that Quigley acquired a valid lien by virtue of his trustee action, apart from the interest, if any, of Federation.
*95 The basic issue is whether under the Uniform Commercial Code-Secured Transactions (11 M.R.S.A. § 9-101 et seq.) the proceeds of the insurance are security for the potatoes destroyed by fire. The pertinent provisions of the Code are set forth below.[1] In the words of the presiding Justice, "We come then to whether the bald assertion of a perfected security interest in the collateral personal property extends to `identifiable proceeds * * * received by the debtor' * * * (11 M.R.S.A. § 9-306(2) when the `identifiable proceeds' constitute money paid by reason of a fire loss under the circumstances found here."
Under general principles of law a fire insurance policy is a personal contract between the insured (here Caron) and the insurer, and does not run with the property. There is nothing whatsoever in the record before us to establish that Federation as the holder of a security interest in the potatoes acquired thereby any interest in the insurance.
"A contract of insurance against fire, as a general rule, is a mere personal contract between the assured and the underwriter, to indemnify the former against the loss he may sustain; and in case a mortgagor effects an insurance upon the mortgaged premises, the mortgagee can claim no benefit from it, unless he can base his claim upon some agreement. But where the assured has agreed to insure for the protection and indemnity of another person having an interest in the subject of the insurance, then such third person has an equitable lien, in case of loss, upon the money due upon the policy to the extent of such interest. These are principles of law well settled." Cromwell v. Brooklyn Fire Ins. Co., 44 N.Y. 42, 47. (1870) *96 Brownell v. Board of Education, 239 N.Y. 369, 146 N.E. 630, 37 A.L.R. 1319 (1925); Shelton v. Providence Washington Ins. Co. (Tex.Civ.App.) 131 S.W.2d 330 (1939); Welch v. Montgomery, 201 Okl. 289, 205 P. 2d 288, 9 A.L.R.2d 294 (1949) with annot. 9 A.L.R.2d 299; 46 C.J.S. Insurance § 1146; 29 Am.Jur. Insurance § 183. Cf. Pittsfield National Bank v. Dyer and Royal Insurance Company, 125 Me. 465, 134 A. 689, 9 A.L.R.2d 304n. (1926)
We are not here concerned with the statutory lien in behalf of a mortgagee on fire insurance procured by a mortgagor or mortgagee. Neither Caron, the insured, nor Federation, assuming it to be for this purpose a mortgagee, attempted to create a lien for Federation under the statute. 24 M.R.S.A. § 1521 et seq. Pittsfield National Bank v. Dyer and Royal Insurance Company, supra.
The statute was neither repealed nor altered with the adoption of the Uniform Commercial Code.
In the Uniform Commercial Code-Secured Transactions the only references to insurance appear to be in Sections 9-104 (7) and 9-207(2) (b). In each instance it is plain that the Code does not create an interest in the insurance for a security holder under the facts of this case.
With the elimination of general principles of law of the statute creating a lien on insurance for a mortgagee, and without any specific provisions in the Code on secured transactions covering the case before us, we turn to the claim of Federation that it is nevertheless entitled to a lien on the insurance monies under the Code.
We are satisfied that payments (or the right thereto) for fire losses often referred to as "insurance proceeds," are not "proceeds" of the collateral security, that is of the potatoes, as that term is defined in Section 9-306(1). "`Proceeds' include whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of." The insurance monies plainly do not come from a sale or exchange or collection of the security.
Were the potatoes "otherwise disposed of"? We answer in the negative. In our view, the Code covers voluntary disposal and not a change from destruction by fire.
Inasmuch as the insurance monies (or as here the claims against the insurance companies) are not "proceeds" of collateral under the Code, it follows that the monies may not be classed within "identifiable proceeds" in Section 9-306(2).
The Rhode Island Court has reached a like result. In holding that insurance payments for losses are not "proceeds" under Section 9-306(1), the Court said: "Insurance moneys or proceeds flow from the insurance contract and not from the property insured." Again, in passing upon the "or otherwise disposed of" clause, the Court said of a tractor demolished in an accident, "This involuntary conversion of the tractor is not a disposition within the meaning of [Section 9-306(1)]." Universal C.I.T. Credit Corp. v. Prudential Invest. Corp. (R.I.) 222 A.2d 571 (1966). See also note on Secured Transactions 65 Mich. Law Review 1514.
No other cases covering the question of whether the proceeds of secured collateral under the Code include proceeds of insurance have been called to our attention.
An additional factor, apart from the persuasive Rhode Island case, gives strength to our view. The statute under which a lien on insurance may be created for the benefit of a mortgagee has not been changed or altered with the passage of the Uniform Commercial Code. This is evidence to us that the Legislature in enacting the Code and in particular the sections relating to Secured Transactions, did not intend to change the existing law relating to fire insurance and the interests of owner and security holder therein.
Federation places its claim on the ground that under the Uniform Commercial Code-Secured Transactions it would be inequitable *97 for the insurance monies to go to Caron and through him via the trustee process to a creditor, and not to Federation which had loaned money on the strength of the potatoes.
The facts are inescapable, however, that the insurance was taken to benefit Caron and not Federation, and that Federation has no interest therein.
The entry will be
Appeal denied.
NOTES
[1] Uniform Commercial Code-Secured Transactions, 11 M.R.S.A. § 9-101 et seq.

"§ 9-104. This Article does not apply.
* * * * *
(7) To a transfer of an interest or claim in or under any policy of insurance; * * *."
"§ 9-105(1) (h) Security agreement. `Security Agreement' means an agreement which creates or provides for a security interest."
"§ 9-201. General validity of security agreement. Except as otherwise provided by this Title, a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors."
"§ 9-207(2)Unless otherwise agreed, when collateral is in the secured party's possession * * *
(b)The risk of accidental loss or damage is on the debtor to the extent of any deficiency in any effective insurance coverage; * * *"
"§ 9-306`Proceeds'; secured party's rights on disposition of collateral.
(1)`Proceeds' include whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money checks and the like are `cash proceeds'. All other proceeds are `noncash proceeds.'"
"§ 9-306(2)Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor, unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."
Uniform Commercial Code11 M.R.S.A. §§ 1-101 et seq.
"Purposes; Rules of Construction; Variation by Agreement.
"§ 1-102(1)This Title shall be liberally construed and applied to promote its underlying purposes and policies.
(2)Underlying purposes and policies of this Title are:
(a) To simplify, clarify and modernize the law governing commercial transactions;
(b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties;
(c) To make uniform the law among the various jurisdictions."
"§ 1-201(37)Security Interest. `Security Interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. * * *"