**PPG INDUSTRIES, INC., Plaintiff,**

v.

**The HARTFORD FIRE INSURANCE COMPANY et al., Defendants.**

**No. 73 Civ. 3550 (WCC).**

United States District Court,
S. D. New York.

Nov. 11, 1974.

Jacob F. Gottesman, New York City, for plaintiff.

Paul J. Curran, U. S. Atty., for the Southern District of New York, New York City, for defendant United States of America; T. Gorman Reilly and David P. Land, Asst. U. S. Attys., of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This proceeding was initiated to resolve conflicting claims to insurance proceeds in the amount of $7,354.29, plus interest from April, 1972, now held by The Hartford Fire Insurance Company ("Hartford") as a stakeholder. PPG Industries, Inc. ("PPG") originally commenced this action in the New York State Supreme Court, New York County, to obtain the fund as a secured creditor of Car Color, Inc. ("Car Color"), the insured. Subsequently, the United States of America intervened as a tax creditor and the action was removed to this Court, pursuant to 28 U.S.C. § 1441, 28 U.S.C. § 1340 and 26 U.S.C. § 7402.

Presently before the Court is an application by the United States of America for an order setting aside that portion of a Report issued by Magistrate Harold J. Raby on July 25, 1974, which held the Government's tax liens against Car Color to be subordinate to the claim of PPG.

### I.

To render understandable the nature of the claims asserted, it is necessary to describe briefly the events which preceded the filing of the action.

In October, 1970, Car Color entered into a Security Agreement with PPG whereby PPG obtained a security interest in all of the equipment of Car Color, as well as its inventory and any future proceeds of the inventory. In addition, Car Color agreed to insure the equipment and inventory for the benefit of PPG. The agreement further provided that Car Color would assign the right to receive the proceeds of the insurance to PPG and direct the insurer to pay such proceeds to PPG.

The Security Agreement was duly filed with the Secretary of State, and the County Clerk, Westchester County, in accordance with the provisions of the New York Uniform Commercial Code ("UCC").

On December 10, 1971 and March 27, 1972, the Internal Revenue Service assessed taxes against Car Color totaling $2,078.10, but neglected to file notices of these tax liens until May 4, 1972. Prior to this filing, on December 23, 1971, a fire destroyed the premises of Car Color and it ceased doing business.

Thereafter, PPG commenced an action against Car Color in the New York Supreme Court, New York County, for goods sold and delivered. A default judgment was entered on April 14, 1972 in the sum of $12,300.90. That judgment is still unsatisfied.

On November 29, 1972, Car Color commenced an action in the New York Supreme Court, Westchester County, against Hartford to recover the proceeds of the fire insurance policy it obtained pursuant to the Security Agreement. That action was removed to this Court, and resulted in a verdict and judgment on April 24, 1973, in favor of Car Color for $7,354.29 with 6% interest from April 3, 1972. 73 Civ. 157. To date, the attorneys who represented Car Color in that proceeding have not received their fee.

In May, 1973, the New York State Department of Labor filed claims against Car Color for unemployment insurance taxes; and in July, 1973 the State of New York filed tax liens for sales and withholding taxes.

The competing claims presented to Magistrate Raby were:

| | |
|---|---|
| United States | $ 2,078.10 |
| PPG | 12,300.90 |
| Henkin & Henkin, Esqs. | 2,451.53 |
| New York State Tax Commission | 7,933.03 |
| The Hartford Fire Ins. Co. Attorney's Fees | 500.00[1] |

---

1. This sum is the Magistrate's estimate for reimbursement of reasonable attorney's fees incurred by Hartford in its capacity as stakeholder.

In an extremely thorough Report, Magistrate Raby determined that the fund should be distributed as follows:

| | |
|---|---|
| Henkin & Henkin, Esqs. (first priority) | $2,654.25 |
| The Hartford Fire Ins. Co. Attorney's Fees (second priority) | 500.00 |
| PPG (third priority) | 4,200.04 |
| United States (fourth priority) | –0– |
| New York State (fifth priority) | –0– |

## II.

The Magistrate concluded that when the fire occurred, PPG had a legal right to the proceeds of the insurance policy, and therefore ruled that: a) although the assignment to PPG was initially equitable, it became a legal and "choate" assignment when the fire occurred; and b) an assignment or pledge of an owner's rights under a fire insurance policy as collateral security for an indebtedness is valid.

The Government now asserts that the Magistrate erred and that PPG's lien cannot take priority over its lien because PPG had not perfected a security interest within the meaning of Section 6323 of the Internal Revenue Code before the filing of the Government's tax lien.

The Government does not contest the validity of PPG's security interest in the secured property, but claims that:

"the assignment of fire insurance proceeds—the fulfillment of which depends upon a subsequent fire, the determination of loss, and the insurance company's fixed obligation to pay—is the assignment of a future right which does not grant to the assignee priority over lienors who have attached before the insurance proceeds come into existence."

Thus, the Government does not contest the priorities assigned to Henkin & Henkin, Esqs. and Hartford, but seeks a redetermination of PPG's third priority designation. It asserts that the fund should be divided as follows:

| | |
|---|---|
| Henkin & Henkin, Esqs. | $2,654.25 |
| The Hartford Fire Ins. Co. | 500.00 |
| United States | 2,078.10 |
| PPG | 2,121.94 |

PPG, on the other hand, bases its claim upon the assignment of the proceeds of the fire insurance covering Car Color's inventory. Although PPG now seeks to maintain its priority by reaffirming its position as an assignee, in order for PPG to prevail it must establish that it had a valid security interest.[2]

## III.

■ ■ Section 6321 of the Internal Revenue Code provides that if a person neglects or refuses to pay any federal tax, a lien arises automatically in favor of the United States, upon all property rights to property belonging to such person. Section 6322 provides that this lien arises on the date of assessment. Therefore, even though a taxpayer may purport to transfer an interest in his property to a third person, the rights of the transferee will be subject to the tax lien except to the extent that on the date of assessment, the transfer is "choate." United States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954). In order for a competing lien to be "choate," the amount of the lien, the property subject to the lien and the identity of the lienor must be certain. Id.

There are, however, exceptions to the rule. Section 6323(a) provides that:

"The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien

---

2. In this regard PPG claims that it intended that its debt be completely secured by the inventory, and that it accomplished this by the filing of the Security Agreement. Thus, PPG claims that the only way to respect the intent of the parties to the agreement is to allow PPG to reach the insurance proceeds.

creditor until notice thereof . . . has been filed . . . ."

Thus, if PPG qualifies as the holder of a security interest, the date by which its interest must have been "choate" is May 4, 1972.

To qualify as the holder of a security interest, PPG must come within the definitional requirements of Section 6323(h). That section provides that:

"The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth."

█ The ultimate issue whether PPG holds a security interest entitled to priority over the Government's tax liens is a federal question. See Aquilino v. United States, 363 U.S. 509, 513–514, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Acri, 348 U.S. 211, 213, 75 S.Ct. 239, 99 L.Ed. 264 (1955); United States v. Security Trust & Savings Bank, 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53 (1950); Dugan v. Missouri Neon & Plastic Advertising Co., 472 F. 2d 944, 949 (8th Cir. 1973); Texas Oil & Gas Corp. v. United States, 466 F.2d 1040, 1049–1050 (5th Cir. 1972), cert. denied, 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973). However, to resolve that question, it is necessary to look to the law of New York to determine the nature of PPG's interest in the insurance proceeds. Aquilino v. United States, *supra*, 363' U.S. at 512–513, 80 S.Ct. 1277; Dugan v. Missouri Neon & Plastic Advertising Co., *supra*.

█ A review of the New York law compels this Court respectfully to disagree with the Magistrate's conclusion that PPG had an equitable assignment of the insurance proceeds which "became a full-fledged legal and 'choate' assignment immediately upon the happening of the fire." The law in New York is well settled that an assignment of a future interest in the proceeds of a claim is equitable only, and does not become a legal assignment until the proceeds have come into existence. Harold Moorstein & Co. v. Excelsior Insurance Co., 25 N.Y.2d 651, 306 N.Y.S.2d 464, 465, 254 N.E.2d 766 (N.Y.C.A.1969). In other words, an equitable assignment becomes a legal assignment when there is a judgment or appropriation of the proceeds in favor of the assignor. City of Utica v. Gold Medal Packing Corp., 54 Misc.2d 708, 283 N.Y.S.2d 611, 614 (Sup.Ct.Oneida Cty.1967), citing, Fairbanks v. Sargent, 117 N.Y. 320, 336–337, 22 N.E. 1039, (1889); In re Modell, 71 F.2d 148 (2d Cir. 1934), and others; Bernstein v. Allstate Insurance Co., 56 Misc.2d 341, 288 N.Y.S.2d 646, 648 (Civ.Ct.N.Y.Cty. 1968). Moreover, the ripening of an equitable lien into a legal lien does not relate back to the date of the execution of the original instrument. Cordaro v. Cordaro, 18 A.D.2d 774, 235 N.Y.S.2d 289, 290 (4th Dept. 1962), aff'd, 13 N.Y. 2d 697, 241 N.Y.S.2d 175, 191 N.E.2d 676 (N.Y.C.A.1963); City of New York v. Bedford Bar & Grill, Inc., 2 N.Y.2d 429, 161 N.Y.S.2d 67, 141 N.E.2d 575 (N.Y.C.A.1957); Matter of Gruner, 295 N.Y. 510, 68 N.E.2d 514 (1946); City of Utica v. Gold Medal Packing Corp., *supra*, 283 N.Y.S.2d at 614.

However, this is not dispositive of the matter. It is beyond dispute that PPG entered into the Security Agreement for the purpose of "securing payment or performance" of an outstanding debt and to insure "against loss or liability." 26 U.S.C. § 6323(h). Furthermore, it is clear that its interest in the inventory was "choate" by the time the Government's notice was filed in May, 1974. See Coogan, Hogan & Vagts, Secured Transactions under the U.C.C. § 12.-08[2] at 1276 (Bender's Uniform Commercial Code Service 1973). The identity of the lienor, and the property sub-

ject to the lien were known by October, 1970; and, by April, 1972 there was a judgment in favor of PPG against Car Color for $12,300.90.[3]

Thus, PPG's lien is entitled to the priority accorded it by the Magistrate if, under New York law, its security interest in the insured property was transferred to the insurance proceeds when the property was destroyed by fire.

The Government asserts that although PPG had a security interest in the secured property, it could not have a security interest in the proceeds of the insurance covering that property because Section 9–104(g) of the New York Uniform Commercial Code, McKinney's Consol. Laws, § 38, provides that Article 9 does not apply to a claim in or under any policy of insurance. Thus, insurance proceeds do not constitute the type of proceeds of collateral in which a security interest continues, provided the interest in the original collateral had been perfected.[4] N.Y. Uniform Commercial Code § 9–306(3) (McKinney 1964).

In support of that argument, the Government cites Quigly v. Caron, 247 A.2d 94 (Me.1968), and Universal C.I.T. Credit Corp. v. Prudential Investment Corp., 101 R.I. 287, 222 A.2d 571 (1966),[5] which specifically ruled that in-

surance proceeds do not come within the meaning of "proceeds" under Section 9–306(1). See also National Bedding & Furniture Industries, Inc. v. Clark, 252 Ark. 780, 481 S.W.2d 690, 691 (1972).

In *Quigly, supra,* the Court found that the phrase "or otherwise disposed of" means "voluntary disposal and not a change from destruction by fire." 247 A.2d at 96. In *Universal C.I.T., supra,* 222 A.2d at 574, the Court found that the "proceeds" which the section refers to must arise from either a sale, exchange, collection or other disposition of either the collateral or proceeds, and that insurance proceeds arise and are paid only as a result of a personal contract, which does not attach to or run with the property.

This Court, however, is constrained respectfully to disagree with the interpretation of Section 9–306 adopted in *Quigly* and *Universal C.I.T.* In 1972, Section 9–306(1) was amended to provide specifically that "insurance payable by reason of loss or damage to the collateral is proceeds . . . ." The official comment on this amendment states:

> "The new . . . sentence of subsection (1) is intended to overrule various cases to the effect that pro-

---

3. The Government does not contest that PPG's security interest in the inventory, under New York law, was perfected before the tax liens were filed.

4. Under Section 9–306(2) of the UCC:
"a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor . . . and also continues in any identifiable proceeds including collections received by the debtor."
Section 9–306(1) provides that:
" '[p]roceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of."

5. The Government has also cited Rath v. Aerovias Interamericanas De Panama, 205 Misc. 135, 127 N.Y.S. 231, 237 (Sup.Ct.N.Y. Cty.1953), for the proposition that where an owner of property has agreed to insure for the benefit of a creditor, but procures insurance payable to himself alone, "the

creditor has an equitable lien on the proceeds." In addition to the language in *Rath* merely being dicta, that case was decided long prior to the adoption of the UCC which expresses a clear intent to protect all transactions which attempt to effect a security interest, 9–102(1), in view of the growing use and complexity of financial arrangements. See 1 Coogan, Hogan & Vagts, Secured Transactions under the U.C.C., § 1.-01[3] (Bender's Uniform Commercial Code Service 1973).
The Government's reference to Harold Moorstein & Co. v. Excelsior Insurance Co., 31 A.D.2d 177, 296 N.Y.S.2d 2, (1st Dept. 1968), aff'd, 25 N.Y.2d 651, 306 N.Y.S.2d 464, 254 N.E.2d 766 (N.Y.C.A.1969) is likewise misplaced. That case involved the *assignment* of proceeds of an insurance policy from a fire which had already occurred. The Court, therefore, was not concerned with the policy considerations behind protecting security interests. See *infra* pages 98, 99.

ceeds of insurance on collateral are not proceeds of the collateral."

Moreover, the Court in *Universal C.I.T.* nullified the express intent of parties who had attempted to effectuate an absolute and indefeasible interest in the collateral securing the debt. In the instant case, Car Color did not obligate itself to obtain insurance for its own benefit, but as further security for the benefit of PPG. The parties clearly intended that PPG should be protected not only against dissipation of the collateral by sale or other disposition, but from the possibility that its security interest might be obliterated or reduced through destruction or damage of the property by fire.

Although New York has not yet adopted the amendment to Section 9–306(1), this Court is not convinced that the New York state courts would follow the interpretation of Section 9–306(1) advanced by the Courts in *Quigly* and *Universal C.I.T.* See 1 Coogan, Hogan & Vagts, *supra*, § 3A.03[c].

We have been able to find only two prior New York decisions involving similar facts. One is Judge Bonsal's unreported decision in Federal Insurance Co. v. Billy's Burgers, 72 Civ. 1098 (S.D.N.Y. Feb. 16, 1973). There the indebtedness of Billy's Burgers to Kent Store Fixtures, Inc. ("Kent"), was secured by a security agreement which was properly filed on February 17, 1970. By the agreement, the debtor assigned to the creditor "all sums which may become payable" under the insurance policy which Billy's Burgers was to obtain as "additional security for the indebtedness."

On August 11, 1971 and March 28, 1972, the Government made tax assessments against Billy's Burgers. Notices were filed August 23, 1971 and April 10, 1972.

The Court ruled that despite the fact that Kent's security agreement was perfected under the UCC, under Section 6323 the property must be in existence for a security interest to attach and that the insurance proceeds were not in existence until February 29, 1972 when the insurance company admitted that it owed the money. Thus, the Government's lien from the August 11, 1972 assessment was given priority over Kent's claim, which in turn was given priority over the March 28, 1972 assessment.

The instant case cannot be distinguished factually from *Billy's Burgers*. However, with all respect, this Court cannot agree with the result reached there.

Although the Court in *Billy's Burgers* discussed the issue of security interest in the insurance proceeds only very briefly, as one of a large number of other priority claims, the underlying rationale of its decision on that issue appears closely to parallel that in *Quigly* and *Universal C.I.T.* None of these opinions convincingly answers, or even discusses, the argument that the property which was the subject matter of the security agreement (here, the inventory), was clearly in existence, and that the proceeds of the insurance are merely the collateral in another form. See 1 Coogan, Hogan & Vagts, *supra*, § 3A.03[c].

The other relevant case, Andrello v. Nationwide Mutual Fire Insurance Co., 29 A.D.2d 489, 289 N.Y.S.2d 293 (4th Dept. 1968), took a different route to the opposite result.

In *Andrello*, the debtor, Andrello, executed and delivered a second mortgage to Hoerle and Kowalsky on certain realty which he owned in order to secure payment of the debt. The instrument recited that the owner of the property (Andrello) convenated to keep the buildings insured against loss by fire for the benefit of Hoerle and Kowalsky and would assign and deliver the policies to them.

On April 7, 1964 Andrello obtained insurance on the property but did not make the proceeds payable to Hoerle and Kowalsky. On various dates from February 26, 1964 through March 2, 1964 the United States filed tax liens against Andrello for unpaid federal taxes. The

liens, however, were improperly filed. Finally, on August 11, 1964 a building on the premises was destroyed by fire.

The trial court, basing its decision upon an interpretation of 26 U.S.C. § 6323 as amended in 1966, found Hoerle and Kowalsky to be "the holder(s) of a security interest" within the meaning of that section.

The Appellate Division affirmed the lower court's decision and agreed "in general with the trial court's analysis of the nature of (the) claim." 289 N.Y.S. 2d at 297.

The Appellate Division ruled, however, that the claim, instead of being considered under the amended Section 6323, should have been considered under that section as it existed prior to the amendment, when it protected "mortgagee(s) (and) pledgee(s) . . ." against unfiled tax liens.

The Court went on to find Hoerle and Kowalsky to be pledgees ("a pledge is a security interest in a chattel or an intangible . . . created . . . for the purpose of securing the payment of a debt . . ." Restatement, Security, § 1; 289 N.Y.S.2d at 298), and concluded that since the purpose of the clause was to provide security in the event of fire, the pledgees, Hoerle and Kowalsky, could hold the insurance proceeds as collateral in lieu of the property itself. 289 N.Y.S.2d 298.

The facts of *Andrello* are clearly similar to those in the case at bar. In both cases, there was a prior security agreement purporting to include as part of the collateral the proceeds of the insurance required to be obtained on the secured property. Although the rights of the claimants in *Andrello* were analyzed in the terms of Section 6323 as it exist-

ed before the 1966 amendment, it appears that the same result would have been reached under the new language, because the Court expressly stated that "a pledge is a security interest." [6]

Thus the final result in *Andrello*, if not clearly binding here, is at least strongly persuasive, particularly since it effectuated, in a reasonable manner, the clear intent of the parties.

The Congressional purpose of the 1966 amendment to Section 6323 was "in part an attempt to conform the lien provisions of the internal revenue laws to the concepts developed in the Uniform Commercial Code." 1966 U.S.Code Cong. and Admin.News, p. 3722. The official comment to Section 9–101 states that:

> "The aim of this Article is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and greater certainty."

Moreover, the Article applies to any transaction intended to create a security interest in personal property. UCC § 9–102. The Article further attempts to provide a "method of safeguarding the interest of a creditor secured by personal property which remains in the hands of the debtor." Anderson, Uniform Commercial Code, § 9–101:3 at 5 (2d ed. 1971).

It is beyond doubt that PPG had a security interest in Car Color's inventory and that the parties intended the proceeds of the insurance on that collateral to be further security for the loan.[7] Thus, in view of the policy considerations behind Article 9, as well as the policy of 26 U.S.C. § 6323 to give preference to security interests as defined by that provision, we are impelled to the

---

**6.** See Creedon, The Federal Tax Lien Act of 1966—An Historic Breakthrough, 4 Harv.J. Legis. 163, 168 (1967):
   "Whereas previously section 6323(a) protected 'any mortgagees and pledges,' the new act substitutes the concept of 'the holder of a security interest,' which is borrowed from the Uniform Commercial Code."

**7.** Community National Bank & Trust Co. v. Long Island Insurance Co. (Sup.Ct.Rich. Cty.) N.Y.L.J., April 20, 1972 at 20 Col. VII; see Andrello v. Nationwide Mutual Fire Insurance Co., 29 A.D.2d 489, 289 N. Y.S.2d 293, 298 (4th Dept. 1968).

conclusion that PPG had a security interest in the proceeds of the insurance which takes precedence over the Government's lien.

The motion of the United States is therefore denied, and the distribution determined by Magistrate Raby is affirmed.

So ordered.