In the Matter of John Steven KINK and Linda Susan Kink, Debtors.

PERSONAL FINANCE COMPANY, Plaintiff,

v.

John Steven KINK and Linda Susan Kink, Defendants.

Bankruptcy No. 80–03828–3.
Adv. No. 81–0757–3.

United States Bankruptcy Court,
W. D. Missouri, W. D.

Oct. 9, 1981.

---

702

Michael J. Drape, Kansas City, Mo., for plaintiff.

Albert L. Hencke, Independence, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT THAT PLAINTIFF HAVE AND RE- CLAIM THE SAME SUM FROM DE- FENDANTS

DENNIS J. STEWART, Bankruptcy Judge.

Plaintiff seeks a decree of nondischarge- ability by means of a set of assertions[1] in

1. The pertinent allegations made by the plain- tiff in its complaint in this action are as fol- lows:

"The Personal Finance Company objects to the discharge of their debt and asks this Court to determine the dischargeability of their claim. On their petitions, the bank-

which it alleges that it has a valid and perfected security interest in personal property of the defendants (more specifically described as:

"1 antique double globe lamp, 1 planter pale, 1 Maple tape holder, 200 albums, glassware · (nick nacks), Books (4 3′ shelves × 60 books each), 1 Wurlitzer organ & stool, 1 Refrigerator/Freezer 36″ Frostless Coldspot, 1 Norge dishwasher, 1 10 gallon aquarium w/fish, 1 48″ Oak vanneered [sic] table, 1 Sears Freezer, 1 10 key adding machine, 1 Smith Carona typewriter, 32 cassettes, 1 Singer Golden Touch & Sew sewing machine, 1 maple darkwood cabinet, 1 brown tweed love seat, 1 card table, 1 brown tweed chair, 1 72″ brown tweed couch, 1 plant shelf, 1 queen-sized bed, boxsprings, mattress & bed frame, 1 Pearl handle 25 automatic, 1 357 Ruger 6 shot pistol 'Security 6', 243 Remington high powered rifle & scope, Stevenson 12 gauge shotgun, 12 gauge (JC Penney's brand), 1 44 black powder, 1 Thompson 50 cal. blk powder muzzle loader, 1 12 gauge single shot goose gun, 1 bolt action 12 gauge shotgun, 1 410 single shot, 1 22 automatic rifle, 1 Polar Compound Bow, reloading equipment, 1 36″ hand-built oak chest, 1 48″ black metal w/2 wicker light frames light stand, 1 36″ bedwide stand, 1 twin maple bed, 1 48″ maple chest, 1 record player, 1 36″ oak bookcase (3 shelves), 1 doll-type lamp, 1 twin maple bed, 1 48″ maple chest, 1 11″ black & white portable television, 1 queen fold-out bed (couch) & cushions, 1 stereo system (speakers, turn table, AVCO), 1 RT1155 cassette recorder-tape deck, 1 gold rocker arm chair.");

that the defendants are in default in their payments on the security agreement and owe a sum of $13,600.00; that the defendants have lost the collateral and have collected some $2,164.00 as insurance proceeds for the loss; that the plaintiff had demanded these insurance proceeds from the defendants; and that the defendants have nevertheless failed and refused to pay these proceeds over to the plaintiff.

These operative facts are not denied by the defendants, but they contend that the plaintiff had no security interest in the insurance benefits; that the insurance monies were not paid for the benefit of the plaintiff; and that the indebtedness underlying the former security interest in the collateral itself does not have to be paid from the insurance monies because it has been, or will be, discharged in bankruptcy.[2]

---

rupts listed the secured debt of this Complainant. Among the collateral listed by the bankrupts were certain guns. This debt was incurred in the State of Illinois in 1977. Sometime in 1980, the guns and certain other items were reported missing and a police report was made April 10, 1980, in Belleville, Illinois.

"The Bankrupts made a claim under an insurance policy and received the sum of ... $2,164.00 ... on said claim....

"In addition, there were various other items involved in the debt.... In attempting to secure these items from the Bankrupts, demand was made and a reply (stating only $130.50 worth of the property remained in the possession of the defendants) ...

"That the value of the total claim is Eight Thousand Five Hundred Ninety Nine and 24/100 Dollars ... and as evidenced ...., there has been a total disregard for this claim."

In their answer filed in this action on May 4, 1981, the defendants "admit (that) certain guns and other items were listed as collateral by the bankrupts. That said guns and other items were stolen from bankrupts and a police report was properly made reporting said loss ... (that) a claim was made under a policy of insurance for aforesaid loss ... That plaintiff was not named as a loss payee on said insurance policy and had no interest in the consideration defendants received on said insurance loss ... That defendants have not disregarded plaintiff's claim and in fact, have tendered and offered to place in plaintiff's possession, the collateral defendants have in their possession."

On the issues thereby joined by the pleadings, the court entered its order on June 24, 1981, setting a hearing on the merits of the action for July 16, 1981. The parties appeared by counsel on that date and both of them declined the evidentiary opportunity which was then explicitly offered them by the court and, rather, asked the court to determine the action on the basis of the files and records in this action.

2. The defendants, in their brief filed in this action on July 10, 1981, state their basic contention as follows: "at the time the policy of insurance with Economy Fire and Casualty Company was issued, September 21, 1978,

The court set a date for a plenary evidentiary hearing of this action which was July 16, 1981. At that time the plaintiff appeared before the court by its counsel, Michael Drape, Esquire, and the defendants appeared by their counsel, Albert L. Hencke, Esquire. Although the parties were then granted an explicit opportunity to adduce evidence, they both declined to do so, instead stating that the court might make its decision by applying the applicable law to the above and foregoing facts which are demonstrated by the pleadings and the pretrial briefs to be uncontradicted.

## II

It seems to be the position of the defendants that their refusing to pay the insurance proceeds over to plaintiff cannot be regarded as willful and malicious conversion so as to be excepted from discharge under § 523(a)(2) of the Bankruptcy Code. They say that the plaintiff, because of its failure to perfect any security interest explicitly in the insurance proceeds, cannot be regarded as having any rights in this fund which could be converted by the defendants.[3]

And further, even if it can be said that a conversion took place, it could not be classified as a "willful and malicious" conversion within the meaning of § 523(a)(3), *supra,* when the defendants may really have subjectively believed that the insurance proceeds did not belong to the plaintiff and thus only refused to deliver them under a claim of right. And a claim of right, "however unreasonable," if nevertheless in "good faith," is sufficient to rule out any claim of willfulness or malice under the law which currently governs in this district.[4]

Further, under the law which currently governs in this district, any ambiguity in the instrument by means of which the security interest is taken as to whether the converted property is to be regarded as security similarly rules out any finding of willfulness or malice.[5] And, in this case, as

---

plaintiff did not have any secured or other interest in the property of defendants. That plaintiff was not named as a loss payee on said policy of insurance, and had no insurable interest in the property covered by the loss nor the consideration defendants received therefrom." There is authority to support the defendants' position that the insurance proceeds do not inure to the benefit of the secured party. See *Universal C.I.T. Credit Corp. v. Prudential Investment Corp.,* 101 R.I. 287, 222 A.2d 571, 574 (1966) (holding that insurance monies are not "proceeds" as defined by § 9–306 of the Uniform Commercial Code so as to be subject to the claim of a secured creditor); *Quigley v. Caron,* 247 A.2d 94, 95 (Me.1968) ("Under general principles of law a fire insurance policy is a personal contract between the insured ... and the insurer, and does not run with the property."); *Ettinger v. Central Penn National Bank,* 2 B.R. 385, 399 (E.D.Pa.1979), *rev'd on other grounds,* 634 F.2d 120 (3rd Cir. 1980) (Insurance proceeds constitute "proceeds" within the meaning of § 9–306 of the Uniform Commercial Code "where the secured party either expressly requires in the security agreement, by other contractual methods or by loss-payee clause, that the debtor must maintain insurance on the secured collateral. The decision does not apply to those situations where the debtor secured insurance on his own initiative for his own purposes to protect himself from loss of his goods which also happen to serve as secured collateral for a debt.") But it

is recognized that these authorities constitute an undesirable result. See, e.g., 69 Am.Jur.2d *Secured Transactions* § 218, p. 41 (1973) to the following effect: "It has been suggested that Article 9 of the Uniform Commercial Code should be modified to make it clear that even though the transfer of an interest in an insurance policy is not a secured transaction within Article 9, insurance paid by reason of a loss or damage to the collateral is 'proceeds,' except to the extent that it is payable to a person other than a party to the security agreement." And, accordingly, they have been eclipsed by the more recent and preferable authority cited in the text of this memorandum.

3. The plaintiff declined to adduce any evidence at the evidentiary opportunity granted by the court. See note 1, *supra.* Accordingly, no evidence was offered that plaintiff perfected any security interest in the proceeds of the specific property constituting the security. It is admitted, however, by the defendants in their answer that "certain guns and other items were listed as collateral by the bankrupts ... [and] were stolen from bankrupts and a police report was properly made reporting said loss."

4. See *Commerce Bank v. Roberts,* 8 B.R. 291, 293 (W.D.Mo.1981).

5. *In re Bellmer,* Civil Action No. 79–6042–CV–SJ (W.D.Mo.1980) ("In reviewing cases on this

noted above, the plaintiff has not perfected any security interest in "proceeds" of the property, so that it is difficult for him to directly establish an ownership interest in the subject matter of these proceedings.[6]

## III

The complaint at bar, however, is treatable as a complaint for reclamation under the uncontradicted and stipulated material facts. This is so because those facts demonstrate that the insurance proceeds were a special fund attributable to property which otherwise would have been in the hands of the debtor at the time of the commencement of the chapter 7 proceeding and, thus, must be regarded as part of the bankruptcy estate even though subject to the debtors' claim of exemption.[7] Reclamation is the converse, it is said, of a trustee's or a debtor's[8] complaint for a turnover order. "The converse of turnover orders directed against the bankrupt or others is the petition of a claimant not in possession who invokes the jurisdiction of the bankruptcy court in order to assert his claim or title and regain possession from the trustee or receiver. This is the ordinary reclamation proceeding ...." 2 Collier on Bankruptcy ¶ 23.11, p. 588 (14th ed. 1978). As such, it is available to a secured claimant seeking to recover its security on its proceeds from the debtor's estate.[9] Further, the plaintiff in turnover proceedings has available to him the liberal rule of *South Falls Corporation v. Rochelle*, 329 F.2d 611, 619 (5th Cir. 1964), when the issue is that of what constitutes the "proceeds" of property of the bankruptcy estate. In that case, it was pertinently held that the "proceeds" of

a bankrupt's property in the hands of another need not be traced directly to the disposition of that property; that, under equitable principles, the turnover order may be imposed against any of the remaining wealth of the defendant:

"Had not the accounts [of the defendant in the turnover proceeds] been satisfied by application of the Bankrupt's funds, South Falls [the defendant] ... would have been compelled to pay these items. South Falls was, and is, therefore better off dollar for dollar. Had not the bankrupt's dollar been transferred, South Falls would have parted with one of its own. That dollar would have come from its own cash or by liquidation of its ample assets. In effect, it now has a dollar, either in cash or property, which it would not have had but for the transfer of bankrupt funds. Of course, where the misappropriation is that of money, equitable concepts analogous to 'tracing' do not require identification of precise dollars as they go through various commercial mutations. The result is that Maggio now turns against South Falls. Turnover relief is proper, that case held, where ' * * * existing chattels, or their proceeds' are available. 333 U.S. 56, 63 [68 S.Ct. 401, 405, 92 L.Ed. 476]. *Here the 'proceeds' of the cash are the remaining assets saved by this misappropriation of bankrupt funds.* See also, *May v. Henderson*, 1925, 268 U.S. 111, 119, 45 S.Ct. 456 [460], 69 L.Ed. 870; *In re Livingston*, N.D.Calif., 1950, 93 F.Supp. 173, 175. To the full extent of such saving, the remaining assets or their subsequent mutations are available for compulsory turnover." (Emphasis added.)

issue, the Court is convinced that the 'willful and malicious' requirement of the statute is meant to impose the necessity of finding a subjective, conscious intent ...").

6. But, as is further noted in the text of this memorandum, when the suit is not against the bankruptcy estate or trustee, but *inter partes*, perfection of the security interest is not an absolute prerequisite of recovery.

7. Under the applicable provisions of the new Bankruptcy Code, even the exempt property of the debtor is to be considered as part of the

bankruptcy estate. See, e.g., *Kursh v. Dial Finance Company of Missouri*, 9 B.R. 801, 802 (W.D.Mo.Bkrtcy.1981).

8. Under the provisions of the Bankruptcy Code, the debtor, in some situations, is empowered to seek relief by means of a complaint for turnover. See, e.g., § 522(h) of the Bankruptcy Code.

9. Which estate includes even the debtor's exempt property. See note 7, *supra*.

See also *May v. Henderson*, 268 U.S. 111, 120, 45 S.Ct. 456, 460, 69 L.Ed. 870 (1925), to the following effect: "... one acting in one capacity, subject to a summary order of the court, may not relieve himself from the duty to pay over money on a summary order by setting up, that although the money is still under his control, he holds it in a different capacity." When, as noted above, reclamation is the converse of turnover, this liberal and equitable meaning of the concept of "proceeds" must necessarily apply in reclamation proceedings. Therefore, the plaintiff is entitled to a judgment for the value of his security to be satisfied, as a matter of reclamation, from the "proceeds" of that security as defined in *South Falls Corporation v. Rochelle, supra.*

These considerations are magnified and fortified by developments in the law under the Uniform Commercial Code. The rule which formerly held that insurance payments were not "proceeds" within the meaning of § 9–306(1) of the Uniform Commercial Code (and thus payable to a secured creditor having an interest in the insured property) unless the secured creditor was a loss-payee of the insurance policy[10] has now been changed. Under the current rule, insurance proceeds are "proceeds" within the meaning of § 9–306(1) of the Uniform Commercial Code regardless of whether the secured party has any formal status as an explicit loss-payee. See *PPG Industries, Inc. v. Hartford Fire Ins. Co.*, 531 F.2d 58, 61 (2d Cir. 1976), to the following effect:

"At least three decisions in other jurisdictions have held that [insurance] funds are not 'proceeds' within the meaning of [§ 9–306(1) ]. *In re Levine*, 6 U.C.C.Rep. 238, 241 (D.C.Conn.1969); *Quigley v. Caron*, 247 A.2d 94, 95 (Me.1968); *Universal CIT Credit Corp. v. Prudential Investment Corp.*, 101 R.I. 287, 222 A.2d 571, 574–575 (R.I.1966). These decisions reasoned that the language of § 9–306(1) does not extend to the involuntary destruction of collateral, and that insurance payments which compensate the loss of such collateral do not qualify as proceeds

since the obligation to pay is derived from a personal surety contract rather than from the insured property itself. In *Fireman's Fund American Ins. Co. v. Ken-Lori Units, Inc.*, 399 F.Supp. 286, 290–291 (E.D.N.Y.1975), these cases were distinguished in a situation where the two security agreements under consideration specifically covered proceeds, a rider to the second policy assigned all insurance payments to the secured party, and the policy itself contained a clause which made the loss payable to the secured party. Under such circumstances, where the parties' clear intention was to give the secured party the benefit of the insured proceeds, the district court held that § 9–306(1) should be construed to include such proceeds. *Id.*, at 290–291.

"The district court below, *despite the absence of a similar loss-payee clause*, specifically rejected the reasoning of the *Quigley* and *Universal C.I.T. Credit Corp.* decisions, and decided that in this case any construction of § 9–306(1) which does not include insurance within the scope of the term 'proceeds' would contravene the express intent of the parties. Furthermore, the Court pointed out that in 1972 the Commissioners on Uniform State Laws amended 9–306(1) to provide that 'insurance payable by reason of loss or damage to the collateral 'is proceeds ...' As the reporter's commentary to this amendment indicates, the 'new ... sentence ... is intended to overrule various cases to the effect that proceeds of insurance on collateral are not proceeds of the collateral.' Although this amendment has not yet been adopted in New York, it is a persuasive indication of the effect which § 9–306 was originally intended to have. Since no New York court has ruled on this question, the fact that the state legislature had not yet enacted this amendment does not preclude a federal court from rendering a decision which is consistent with the original intention underlying § 9–206. For this reason, *the district court was correct in holding that*

---

10. See note 1, *supra.*

*PPG had a security interest in the proceeds of the insurance policy.*" (Emphasis added.)

See also *Ettinger v. Central Penn Nat. Bank*, 634 F.2d 120, 125 (3d Cir. 1980) ("[I]n 1972 the Commissioners on Uniform State Laws had amended the Uniform Commercial Code to state explicitly that insurance payments are proceeds. The official reasons for this amendment imply an intent to make explicit what had been intended from the beginning ... The official text of § 9–306(1) was amended in 1972 to state: 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.' "); *Paskow v. Calvert Fire Ins. Co.*, 579 F.2d 949, 954 (5th Cir. 1978) ("Because § 9–306(1) can reasonably be construed to include insurance payable by reason of loss or damage to the collateral, we agree with the Second Circuit that the amendment to § 9–306 incorporated in the 1972 version of the U.C.C. 'is a persuasive indication of the effect which § 9–306 was originally intended to have.' "); *Aetna Ins. Co. v. Texas Thermal Industries*, 436 F.Supp. 371, 376 (E.D.Tex.1977) ("In *PPG Industries, Inc. v. Hartford Fire Ins. Co.*, 384 F.Supp. 91 (S.D. N.Y.1974), aff'd 531 F.2d 58 (2d Cir. 1976), the trial court ... even in the absence of a loss-payee clause in the insurance policy involved, held that any construction of § 9–306(1) which did not include insurance within the meaning of the term proceeds would be opposed to the express intent of the parties in that case."). Application of these persuasive and governing principles to this case dictate that the plaintiff have and recover the amount of the insurance proceeds.

And this result must obtain even though the plaintiff has not taken the pains to demonstrate to the court that it has perfected its security interest in the collateral which is the subject of the action at bar. For the issue of perfection is involved only when the trustee or other lienholder is seeking to establish the priority of his interest. In this suit, the issue is one of *inter partes* and, between the parties to a security agreement, the agreement has force whether or not perfected in the manner prescribed by law. Further, the suit in this action is to recover property which the debtor may claim as exempt against the trustee in bankruptcy, but not from the plaintiff.[11]

Any other result would offend all concepts of fairness and the fundamental and traditional concepts of bankruptcy law. It would mean that the debtors would, by utilization of the bankruptcy law, achieve a windfall in value at the expense of the plaintiff. By employing the technicality that the insurance contract is strictly between the debtors and the insurer, and then applying the concept of discharge in bankruptcy, the debtors in substance would usurp all benefits of the plaintiff's security interest in the insured property. They would thereby stand behind the processes of the bankruptcy court and refuse to grant plaintiff the value which should rightly belong to it. Even when the letter of the law of bankruptcy would appear to permit such unconscionable results, however, the courts of bankruptcy have refused to lend themselves to "legalized fraud" resulting in the arrogation of unearned benefits to the debtor at the expense of creditors. See, e.g., *In re Magee*, 415 F.Supp. 521 (W.D.Mo.1969).

Finally, however, it must be held that, under the pleadings and documents in the files and records in this action, on the sole basis of which this court has been requested by both parties to render its decision, no relief appears to be necessary with respect to the collateral not the subject of the insurance proceeds, with respect to which the defendants state in their pretrial summaries filed on July 9, 1981, that they "have offered to return to plaintiff the items of

---

**11.** The exemptions afforded a debtor by § 522 of the Code are claimable against the trustee in bankruptcy. But if a creditor has a right or a

debt in his favor which survives the bankruptcy proceedings, it would appear that exemptions under state law must be relied on.

encumbered personal property in their possession." Therefore, although the defendants and plaintiff appear to be at odds over precisely what items were subject to the security agreement, they have spurned the court's offer of a hearing and it must therefore be assumed that the offer to turn over the proper collateral obviates the necessity for any formal relief in this regard.

It is therefore

ORDERED AND ADJUDGED that the defendants forthwith turn over to the plaintiff the sum of $2,164.00.