Meier Steinbrink,
Spec. Ref. Plaintiffs are judgment creditors of defendant M. & S. Bagels, Inc., hereafter referred to as M. & S. These judgments were recovered on June 11, 19 and 21, 1963, for goods sold and delivered and services rendered from November, 1962, to March, 1963. Defendant M. & S. conducted its business at 1764 Jerome Avenue, The Bronx. It had acquired title from Max Fertel about September 7, 1961, subject to the lien of a purchase-money chattel mortgage for $20,600 given by Fertel to Webster Bagel Co., Inc., hereafter referred to as Webster, on September 5, 1961, as part of the purchase price in the sale by Webster of the business to Fertel. In other words, Fertel bought from Webster and executed the purchase-money chattel mortgage and then promptly transferred the business to his corporation M. & S. subject to the chattel mortgage.
The mortgage was on September 8, 1961, timely and properly filed in the office of the City Begister of Bronx County. It covered the chattels listed in the schedule annexed thereto. The obligation to Webster also was evidenced by a series of promissory notes signed by Fertel and his wife. Apparently, M. & S. or Fertel made the required payments until April, 1963. On May 2, 1963, Webster brought an action to foreclose the mortgage for a balance of $16,929 claimed due and on July 25, 1963, recovered judgment for $16,920 against M. & S. and the Fertels.
The chattel mortgage contained the usual clause requiring the mortgagor to keep the chattels insured against loss and damage by fire for the benefit of the mortgagee. In spite of this, M. & S. obtained a fire policy from defendant American & Foreign Insurance Co., hereafter referred to as Insurance Carrier, for $20,000 without naming the mortgagees as an insured. On March 3,1963 a fire occurred on defendant M. & S. ’s premises and the chattels were destroyed or damaged. M. & S. apparently ceased to do business after the fire. On March 4, 1963 (one day after the fire), an indorsement of the fire policy was obtained from the insurance carrier making the loss payable to Webster as first mortgagee. The insurance carrier and M. & S. appar *539 ently carried on negotiations looking to the settlement of the fire loss. On April 24, 1963, Webster made a demand upon the insurance carrier for the insurance proceeds. There seems to have been an agreement reached that the loss would be “settled ” or “adjusted”, depending on which view was accepted, for $8,000. The insurance carrier claims that there was merely an ‘ ‘ adjustment ’ ’ of the amount of the claim not a “ settlement ” as it could not ‘ ‘ settle ’’ until it was determined who was entitled to the fund and with whom the settlement could be made. This is material only on the question of whether the insurance carrier should be required to pay interest on the $8,000, it having made no tender into court. That issue will be discussed later.
At any rate, before any payment on the fire claim, the third-party subpoenas, pursuant to section 781 of the Civil Practice Act, now CPLB, 5222, were served upon the insurance carrier by plaintiffs judgment creditors. Plaintiffs claim that they thereby obtained liens to the extent of their judgments upon the proceeds of the fire loss superior to the claims of defendant mortgagee and that they should have priority of payment. Plaintiffs also seek payment of their claims out of the insurance proceeds on a theory of “marshalling of assets”. The claim is asserted that Webster has the individual liability of the Fertels as additional security, whereas their claims are only against M. & S. Judgment against the Fertels as well as M. & S. for almost $17,000 was in fact recovered by Webster, but there is no proof that this judgment or claim has any value. The elements necessary for equitable marshalling are not present.
The issue of priority as to the insurance proceeds presents a more difficult problem. Counsel has not cited nor have I found in any of the reported cases any prior determination on facts similar to the instant case where the dispute has been between the holder of a mortgage and judgment creditors claiming liens by reason of third-party orders served on the insurance carrier.
Defendant Webster is the holder of the purchase-money mortgage covering the chattels which were destroyed by the fire. Certainly up to the time of the fire it had liens on these chattels superior to the claims of creditors of the mortgagor or his transferee. The mortgage contained a clause requiring the mortgagor to carry fire insurance for the benefit of the mortgagee. In fact insurance was carried but the usual mortgage clause was not included in the policy. It would not have cost anything additional to include such clause and I deem its absence an inadvertent oversight. The owner having been obligated to have a provision inserted in the policy in favor of the mortgagee, *540 equity may treat the policy as having contained such a provision (Moncrief v. Ross, 50 N. Y. 431, 436). That this was the clear intent of the parties is evidenced by the fact that such a provision was inserted but not until the day after the fire. I do not regard that as fatal to the mortgagee’s claim.
Had there been no provision in the mortgage for insurance in favor of the mortgagee, the result might well be different since the owner could not make a preferential assignment of the proceeds of the fire loss to one creditor. Of course, as between the owner and the mortgagee under a mortgage in which covenants to keep the property insured for the benefit of the mortgagee the latter has an equitable lien upon the proceeds of insurance even though the policy contains no mortgage clause (Cromwell v. Brooklyn Fire Ins. Co., 44 N. Y. 42, 47; Greenberg v. 1625 Putnam Ave. Corp., 241 App. Div. 623).
Plaintiffs argue, however, that such lien does not attach where unsecured creditors thereafter obtain judgments and diligently proceed to tie up the funds in the hands of the insurance carrier by service of subpoena under section 781 of the Civil Practice Act, now CPLB 5222. I cannot agree. Whatever rights plaintiffs judgment creditors obtained by reason of their subpoenas were subject to the rights of secured creditors of the debtor such as I find Webster to be. The defendant Webster is entitled to the proceeds of the fire loss, and since the proceeds are less than the amount due on the mortgage there is nothing to which plaintiffs ’ claims can attach.
I do not believe that the insurance carrier is required to pay interest. There were substantial and conflicting claims asserted in good faith and the company could not “ settle ” with any of the parties except at its peril. The determination, with all parties now before the court, sustaining the cross claim of Webster that it is entitled to the proceeds, will permit payment under the judgment, in safety to the insurance carrier. Only then can interest begin to run.