OPINION OF THE COURT
Bentley Kassal, J.
motions
Plaintiff moves for summary judgment against all defen *245 dants and against interpleaded defendant Stuyvesant Fuel Service Corp. (Stuyvesant) in this action to recover proceeds under a fire insurance policy, as mortgagee on the premises.
Defendant and interpleading plaintiff, New York Property Insurance Underwriting Association (New York), cross-moves for an order pursuant to CPLR 1006 discharging it from liability in whole to any party in this above action upon the ground that New York is a mere stakeholder and has no interest or claim upon the amount in dispute.
Defendant, City of New York (NYC), cross-moves for summary judgment against plaintiff.
All other parties are in default.
Plaintiff does not seek summary judgment against B. F. Gold & Co., Inc., and concedes B. F. Gold’s claim for insurance adjuster commissions.
PACTS
The dispute centers on a policy of fire insurance issued on December 11, 1977 by New York to defendant property owner, Tape Realty Corporation (Tape), as required by a mortgage on the property held by plaintiff.
A fire occurred in March, 1978, the loss was negotiated and settled and a draft issued by New York in the amount of $14,900, dated July 28, 1978, naming the plaintiff, Tape, Stuyvesant (a judgment creditor of Tape), B. F. Gold & Co., Inc., and NYC, as payees.
NYC claims a lien on the proceeds for $17,122 with priority to plaintiff’s rights on the basis of section 22 of the General Municipal Law, title C of chapter 17 of the Administrative Code of the City of New York, and sections 33-a and 168-c of the Insurance Law.
LAW
Chapters 738 and 739 of the Laws of 1977 were enacted to provide for outstanding real property taxes and other municipal charges to constitute a lien against the proceeds of fire insurance policies and to provide for the enforcement thereof. Pursuant thereto, amendments to section 22 of the General Municipal Law, sections 33-a and 168-c of the Insurance Law were effected.
In essence, subdivision 3 of section 22 of the General Municipal Law now requires a filing with the State Superintendent *246 of Insurance by a collecting officer of a tax district of a notice of intention to claim against proceeds before a lien will be established.
However, subdivision 4 of section 22 of the General Municipal Law indicates that before such a filing may become effective, the local legislative body for the tax district must first adopt a local law that provides for the release of funds to the insured upon its agreement to improve or restore the premises to a condition existing prior to the time the lien arose.
By authority of Local Law No. 82 of the City of New York, effective November 15, 1977 (see Administrative Code, ch 17, tit C) NYC became entitled to effectively file a notice of intent pursuant to section 22 of the General Municipal Law.
Subsequently, Circular Letter No. 2 of 1978 was issued which indicates that the New York City Department of Finance did so file a notice of intent to claim fire insurance proceeds and that pursuant to subdivision 3 of section 33-a of the Insurance Law, as amended, said notice became effective December 21, 1977 as constructive notice to each insurer of the tax districts’ claim against proceeds.
All of the above must be read in conjunction with section 4 of chapter 738 of the Laws of 1977 which provides that the amendments referred to shall take effect on November 3, 1977 and apply to all fire insurance policies issued, reissued or renewed on or after such date.
Clearly then, NYC’s lien on the proceeds for unpaid taxes became effective December 21, 1977 as to all policies issued on or after November 3, 1977.
The policy in this matter was issued on December 11, 1977 and the fire damage occurred on March 5, 1978 at a time when the lien was already filed.
ISSUE
Hence, the only issue is whether or not plaintiff may be treated as a "mortgagee of record named in said policy” so that its rights to the proceeds under subdivision 2 of section 22 of the General Municipal Law will not be subordinate to those of NYC.
Several cases have held that where a mortgagor is bound by covenant to insure the mortgaged premises against loss by fire for the benefit of the mortgagee and breaches the covenant, the mortgagee has an equitable lien upon the money due on *247 the policy obtained by the mortgagor to the extent of the mortgagee’s interest in the property destroyed, even though the policy contains no mortgage clause and is payable to the mortgagor (Nor-Shire Assoc. v Commercial Union Ins. Co., 25 AD2d 868; Weinreb v M & S Bagels, 44 Misc 2d 537, affd 23 AD2d 884; Andrello v Nationwide Mut. Fire Ins. Co., 29 AD2d 489).
However, there are apparently no cases which hold an equitable lien enjoys priority over a tax lien duly filed as authorized by chapters 738 and 739 of the Laws of 1977.
DECISION
The applicable statute is clear in that subdivision 2 of section 22 of the General Municipal Law provides that the lien of a tax district (here, the City of New York) shall be a lien against such fire insurance proceeds "prior to all other liens and claims except the claim of a mortgagee of record named in such policy. ” (Emphasis added.)
In this case, admittedly, the lien of NYC was perfected on December 22, 1977, the mortgage of plaintiff was recorded on December 23, 1977 and plaintiff is not named as a mortgagee on the policy.
Therefore, for two critical reasons, the plaintiff may not prevail over NYC:
(1) The language is clear in that plaintiff’s mortgage interest was not recorded until December 23, 1977, one day after the city’s tax lien was perfected.
(2) This is a question of a recorded lien prevailing over a subsequently recorded equitable lien. It is not the case of an equitable lien holder prevailing against general creditors or nonlien holders as in Nor-Shire Assoc. v Commercial Union Ins. Co. (supra), Weinreb v M & S Bagels (supra) and Andrello v Nationwide Mut. Fire Ins. Co. (supra).
(3) The public policy behind the requirement for prompt recording of liens would be severely hindered if plaintiff’s position were to prevail.
Accordingly, plaintiff’s motion is denied and defendant NYC’s cross motion for a discharge is granted. Interpleader plaintiff and defendant NYC’s cross motion for a discharge is granted upon payment of the sum of $14,900 to defendant NYC.