OPINION OF THE COURT
Herman Cahn, J.
Defendant and interpleaded defendant, New York Property Insurance Underwriting Association (NYPIUA) issued a fire insurance policy covering 396 South 3rd Street, Brooklyn, on March 16, 1978. Said premises at the time were owned by plaintiffs Knoll and Weinberg. On June 13, 1978, the premises were damaged by fire. Plaintiffs Knoll and Weinberg retained the law firm of Weg Myers & Jacobson, P. C., the interpleading plaintiff (Weg Myers), to commence an action against NYPIUA to recover this loss pursuant to the fire insurance policy. By the terms of its retainer, Weg Myers was entitled to be paid one third of plaintiffs’ recovery.
After an action was commenced, a judgment was entered against NYPIUA, in favor of plaintiffs, in January, 1982, for $15,935. Thereupon, NYPIUA, by letter dated January 27, 1982, notified the city collector that it proposed to pay the judgment, pursuant to section 33-a of the Insurance Law. Within 20 days, the City of New York (City) made a claim against the proceeds, for outstanding taxes, assessments and charges imposed against the parcel at issue. The claim was made pursuant to section 22 of the General *3 Municipal Law, by service upon NYPIUA of a certificate of special lien, dated February 11, 1982. It included interest and penalties to that date.
NYPIUA issued two drafts which together totaled the amount of the judgment. One was for $7,144.57, payable to plaintiffs, Weg Myers and Sapperstein Hochberg & Haber-man, another lienor. The proceeds of this draft were apparently distributed to its payees, and it is not directly involved herein.
The second draft is in the sum of $8,820.43, the exact amount the city asserts is owing to it. It is made payable to the same parties as the first draft, and to the City. Said draft is the subject of the within motion and cross motion for summary judgment and associated relief.
Since 1974 most of the real estate taxes, assessments and charges imposed by the City against plaintiffs’ premises have not been paid. From the third quarter of fiscal year 1974 to 1975, and for each quarter thereafter continuing to the fourth quarter, unpaid real estate frontage charges and sewer rents have accumulated. Moreover, between the fourth quarter of 1977 and June 13, 1979, the date of the foreclosure, additional unpaid real estate taxes, frontage and sewer rents accumulated.
On June 13, 1979, the City foreclosed on plaintiffs’ property. Since the foreclosure, the City has apparently continued to accrue interest and some taxes and other charges.
The City asserts that it seeks the proceeds of the second draft pursuant to a special lien created by section 22 of the General Municipal Law, title C of chapter 17 of the Administrative Code of the City of New York, and section 33-a of the Insurance Law. It argües that in accord with these provisions of law, its special lien has priority over all other liens, except the claim of a mortgagee of record named in the policy, and further that an attorney cannot obtain a charging lien against moneys to which the client has no claim. It is undisputed by the parties that there is no mortgagee named herein. The City also argues that there are questions of fact raised as to the distribution of the proceeds of the first draft.
*4 Weg Myers does not dispute the constitutionality or propriety of section 22 of the General Municipal Law which creates the City’s lien. It does, however, advance a number of arguments in support of its claim to one third of the proceeds of the second draft. Weg Myers maintains: (1) that the City has no independent right to collect money under the fire insurance policy and that its rights are derivative of the property owners. Therefore, the City’s rights are subject to those of plaintiffs’ attorneys’ — Weg Myers; (2) that the amount of the City’s lien asserted herein includes an ex post facto taking of property, as the City is claiming entitlement to taxes and other assessments which became due prior to November, 1977, the effective date of section 22 of the General Municipal Law; (3) that the City’s in rem foreclosure on June 13, 1979, bars further assessments for the subject premises, as the City itself was the owner and finally, (4) that Weg Myers’ (attorney’s) lien has priority over the City’s lien.
Pursuant to section 22 of the General Municipal Law and title C of chapter 17 of the Administrative Code, the City is empowered to claim the proceeds of a fire insurance policy issued upon real property where there are outstanding unpaid taxes, assessments and charges. (General Municipal Law, § 22, subd 2.) The City availed itself of the right to claim against insurance proceeds in enacting title C of chapter 17 of the Administrative Code effective November 15, 1977.
Hereafter, the City’s Department of Finance served upon the State Superintendent of Insurance the requisite notice of intention to make claim against the proceeds of fire insurance policies for unpaid taxes, assessments and charges against real property located in the City. (Insurance Law, § 33-a, subd 3.) Thus, although Weg Myers argues that plaintiff has no “independent” right to collect money under a fire insurance policy, under the clear language of section 22 of the General Municipal Law and title C of chapter 17 of the Administrative Code, the City is given the right to make such claim to the extent of any liens on the property. Thus, whether the City’s rights hereunder are “independent” or merely “derivative”, is of no practical importance to the decision of this proceeding.
*5 Weg Myers’ position that its claim for attorney’s fees has priority over the City’s special lien is also untenable. Although Weg Myers argues that its efforts provided the fund, and that as such, its lien should have priority, subdivision 2 of section 22 of the General Municipal Law clearly provides that the lien of a tax district shall have priority over all other liens and claims except the claim of a mortgagee of record named in such policy. (Builders Affiliates v North Riv. Ins. Co., 91 AD2d 360, 366; see, also, Kovacs v New York Prop. Ins. Underwriting Assn., 101 Misc 2d 244; New York Prop. Ins. Underwriting Assn. v City of New York, Supreme Ct, NY County, March 31, 1982, index No. 27107/81; Palad Realty Corp. v Fair Plan Ins., Supreme Ct, Kings County, Sept. 20, 1982, index No. 3278/81.)
The contention that the City’s in rem foreclosure of the subject premises in June, 1979, is a bar to its collection of taxes and assessments which accrue prior to the date of said foreclosure is not a valid one. Subdivision 5 of section 22 of the General Municipal Law expressly provides: “The provisions of this section shall not be deemed or construed to alter or impair the right of a tax district to acquire or enforce any lien against real property but shall be in addition to any other power provided by law to acquire or enforce such right”. See, also, section C17-4 of the Administrative Code of the City of New York, which provision is substantially identical. As was stated in Palad Realty Corp. v Fair Plan Ins. (supra), “This entitlement is in addition to, and not in lieu of, the City’s right to acquire the property by an in rem foreclosure and is irrespective of the fair market value of the property (General Municipal Law, § 22 subd 5; 2 A New York City Administrative Code § C17-4 p. 57 of 1981-82 Cum. Supp.; Shirpsen Realty Corp. v. City of New York, supra, p. 719).”
However, while it is clear that foreclosure by an action in rem by the City does not extinguish or nullify its special lien, there is no authority or support for the City’s position that it is entitled to taxes, or assessments for any period after, it has acquired title to property. The lien asserted here apparently includes amounts on account of taxes which only accrued after the foreclosure.
*6 The final argument asserted is that if the City’s basic position is upheld, and its lien granted priority, the City is not entitled to taxes and other assessments which became due prior to the effective date of title C of chapter 17 of the Administrative Code of the City of New York. It argues that such retroactive application of the statute amounts to an ex post facto law.
That the legislative intent behind section 22 of the General Municipal Law and title C of chapter 17 of the Administrative Code of the City of New York was to take the profit out of arson was made clear in the 1977 memoranda in support of the bill. As was stated in McKinney’s Session Laws of New York (1977, p 2421): “This bill would take the profit out of arson by allowing a locality to share in fire insurance proceeds. This sharing would be to the extent necessary to pay for liens placed by the locality against real property for taxes, assessments, charges and work performed. Thus, an owner of an arson-prone building, and in tax arrears and subject to municipal liens or litigation, will have less incentive to destroy that building by fire in order to secure insurance proceeds.” (See, also, Shirpsen Realty Corp. v City of New York, 107 Misc 2d 714, supra.)
Although title C of chapter 17 of the Administrative Code of the City of New York became effective in November, 1977, it seems apparent from the clear expression of legislative intent and the language of the statute itself, that it was meant to be applied retroactively. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 51.)
In subdivision (c) of section 17-1 of the Administrative Code of the City of New York lien is defined as follows: “any lien including liens for taxes, special ad valorem levies, special assessments and municipal charges arising by operation of law against property in favor of the city and remaining undischarged for a period of one year or more.” (Emphasis supplied.) If at the time of the enactment of this section of the Administrative Code, the legislature had intended the statute to be applied prospectively only, it is beyond purview that it would have indicated it would apply only to tax arrears, etc., accruing as of the effective date of the statute. Such prospective reading and applica *7 tian of the section, would be inconsistent, not only with the legislative intent, but the language of the section as well.
Weg Myers’ motion for summary judgment is denied. The City’s cross motion for summary judgment is granted as to .the substantive issue of the priority of the City’s special lien. On the papers submitted, an issue of fact as to the amount of the special lien remains. Such issues shall be tried expeditiously before a referee. (CPLR 3212, subd [c].)