OPINION OF THE COURT
Irving Lang, J.
Which lien has priority on fire insurance proceeds — an equitable lien of a mortgagee or a special tax lien of the City of New York?
Petitioners move pursuant to CPLR article 78 for an order directing respondent City Collector of the City of New York, Department of Finance, to indorse and release an $18,000 check comprising proceeds of a fire insurance policy. Respondent city opposes the motion, arguing that the City of New York holds a special tax lien against the money, which has priority over all other existing liens. Respondent submits that the $18,000 check should be released to it in partial satisfaction of that special lien.
*408 FACTS
On July 21, 1978, property at 197 Roebling Street was sold by a corporation owned by petitioners to respondent Lobo Equities Inc. Lobo Equities simultaneously executed a $40,000 bond and mortgage to the seller corporation. The mortgage was then assigned to petitioners in amounts equal to their interest in the corporation. The mortgage and assignment were recorded in Kings County on August 10, 1978. The mortgage contains a clause which requires Lobo Equities to obtain fire insurance for the benefit of the mortgagees. Yet, neither the mortgagees nor the petitioners (as assignees) are named in the policy purchased by Lobo Equities.
The last payment on the mortgage was made on June 1, 1981, leaving a balance in excess of $31,000.
On January 22, 1982, the property was destroyed by fire. Pursuant to Insurance Law § 331 (d),[1] the city received notice from Harold J. Smith, Adjusters, on February 10, 1982, that Lobo Equities had submitted a claim for payment of damages resulting from the fire. The city then filed a certificate of special lien under New York City Administrative Code, chapter 17, title C[2] against the proceeds of the policy. The special *409 lien covered outstanding real estate taxes and municipal charges due on the property. (As of the date of the fire, the city had a lien against the property in an amount exceeding $27,000 for real estate taxes which accrued between June 30, 1978 through January 1, 1982; as of July 27, 1984, with interest and penalties, the lien exceeded $55,000.)
On January 9, 1984, a three-party check in the amount of $18,000 was issued by respondent Caesar and Ginsburg, P. C., to the order of Lobo Equities, Fenner and Gravitz (adjusters) and the City of New York, in settlement of the insurance claim. The fire insurance proceeds are currently in the custody of the escrow account of Caesar and Ginsburg.
Petitioners requested that the city indorse and release the check to it, on the ground that, as assignees of the mortgage, they hold an equitable lien on the check equal to the outstanding balance on the mortgage, which, they claim, is superior to the city’s tax lien. Since the outstanding mortgage balance exceeds the amount of the check, petitioners contend that they are entitled to all of the fire insurance proceeds.
The city has refused to indorse and release the check. Relying on General Municipal Law § 22,[3] the Insurance Law, and the Administrative Code, it claims that the city’s tax lien has priority over all other liens except a mortgagee of record named in a fire insurance policy. Inasmuch as there is no mortgagee of record so named in the policy purchased by Lobo Equities, the city contends that it is entitled to the fire insurance proceeds in partial satisfaction of its tax lien on the property.
ANALYSIS
The question of whether the city tax lien has priority over the mortgagees’ equitable lien is one of statutory interpreta *410 tion. The Laws of 1977 (chs 738, 739) were enacted by the New York Legislature to amend portions of the Insurance Law and General Municipal Law. These amendments permit taxing authorities to assert claims against fire insurance proceeds in order to recoup unpaid real estate taxes and other municipal charges due on insured property (Kovacs v New York Prop. Ins. Underwriting Assn., 101 Misc 2d 244; Memorandum of Legislative Representative of City of New York, 1977 McKinney’s Session Laws of NY, at 2420). The ultimate goal of the amendments was to take the profit out of arson by allowing a locality to share in fire insurance proceeds to the extent necessary to pay for liens placed by the locality on real property for taxes and various assessments. "Thus, an owner of an arson-prone building, and in tax arrears and subject to municipal liens or litigation, will have less incentive to destroy that building by fire in order to secure insurance proceeds.” (Memorandum of Legislative Representative, op. cit, at 2421.) The bill’s drafters specifically intended not to effect a mortgagee whose insurance policy serves to protect his investment. (Id.)
Essentially, General Municipal Law § 22 now requires that an officer of a tax district file with the State Superintendent of Insurance a notice of intention to claim against fire insurance proceeds. Pursuant to Local Laws, 1977, No. 82 of the City of New York (eff Nov. 15, 1977; see, Administrative Code, ch 17, tit C) New York City became entitled to file a notice of intent under General Municipal Law § 22. In 1978, the New York City Department of Finance filed a notice of intent to claim against fire insurance proceeds. According to Insurance Law former § 33-a, said notice became effective as of December 21, 1977, as to all fire insurance policies issued, reissued, or renewed on or after November 3, 1977. (Kovacs v New York Prop. Ins. Underwriting Assn., supra, at p 246; Knoll v New York Prop. Ins. Underwriting Assn., 120 Misc 2d 1, 4.) Such filing is a condition precedent to the establishment of a valid lien, and constitutes constructive notice to each insurer of the tax district’s claim. Thus, before an insurer makes payment under a fire insurance policy insuring property situated within a particular tax district, the insurer is bound to notify that district’s enforcing officer that a loss has occurred and that payment is being rendered under the policy. (Insurance Law § 331.) The enforcing officer in turn has 20 days within which to exercise its lien against the proceeds. The officer effectuates the lien by serving the insurer with a certificate *411 specifying the amount of real estate taxes and other charges outstanding against the property. Once the certificate is filed, the amounts reflected therein constitute a lien on the insurance proceeds.
In the instant case, the Commissioner of Finance of the New York City Department of Finance was notified that respondent Lobo Equities submitted a claim for payment due to the January 22, 1982 fire. On February 25, 1982, within the 20-day period provided by Insurance Law § 331 (d), the Commissioner filed a certificate of special lien. The insurer, Caesar and Ginsburg, consequently issued the $18,000 check to Lobo Equities, Inc., New York City, and Fenner and Gravitz in satisfaction of the claim.
Petitioners argue that, as mortgagees, they hold an equitable lien against the $18,000 check which enjoys priority over the city’s special lien. They claim that, according to paragraph 2 of the mortgage dated July 21, 1978, the mortgagor was bound by covenant to insure the mortgaged premises for loss by fire for the benefit of the mortgagee. Petitioners contend that where, as here, the mortgagor neglects to name the mortgagees as beneficiaries under the policy, equity will nevertheless treat the mortgagees as having an equitable lien upon the money due on the policy obtained by the mortgagor, to the extent of the mortgagee’s interest in the destroyed property. (Kovacs v New York Ins. Prop. Underwriting Assn., supra; Andrello v Nationwide Mut. Fire Ins. Co., 29 AD2d 489, 493 [4th Dept 1968]; Nor-Shire Assoc. v Commercial Union Ins. Co., 25 AD2d 868 [2d Dept 1966].) Petitioners also argue that General Municipal Law § 22 (2) renders the claim of a mortgagee superior to the city’s tax lien.
Petitioner is correct that, as a general equitable principle, where a mortgagor is bound by covenant to insure the mortgaged premises for the benefit of the mortgagee, and when he breaches that covenant, the mortgagee has an equitable lien on the money owing on the policy even though the policy contains no mortgage clause and is payable to the mortgagor. (Weinreb v M. & S. Bagels, 44 Misc 2d 537, affd sub nom. Weinreb v Webster Bagel Co., 23 AD2d 884.) However, this court is unaware of any case which holds that an equitable lien is superior to a city tax lien filed pursuant to the General Municipal Law and the Insurance Law.
Petitioner misconstrues General Municipal Law § 22 (2). That section does not provide that a tax lien is subordinate to *412 any mortgagee’s claim. Rather, the section, by its terms, is expressly limited — it provides that the tax lien is only subordinate to the claim of a mortgagee of record named in the insurance policy. Petitioners, by relying on equitable theories seek to invoke those protections of a mortgagee named as beneficiary. Yet my reading of the relevant statutes does not permit that result. The specific terms of the General Municipal Law § 22, the Insurance Law § 3410 (a) and § 331, and the Administrative Code unequivocally state that the only lien-holder that has priority over the city’s special lien is a mortgagee denoted in the policy. The language of these statutes is clear and unambiguous. It is axiomatic that when the terms of a statute are plain and certain, the statute must be construed according to its expressed terms. (Fingerlakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480.) Statutes should be construed to give effect to the plain meaning of the words. (Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208.) Since the fire insurance policy at bar does not contain a mortgage clause listing petitioners as beneficiaries, the relevant statutes compel a finding that the city’s special lien has priority over all existing liens or claims on the fire insurance proceeds. (Obviously, petitioners could have protected their rights by reviewing the policy and insisting that they be named as payee under the standard mortgagee clause.)
Finally, petitioners argue that the equitable lien arising out of the mortgage was perfected on August 10, 1978, the date on which the mortgage was recorded, and that any alleged tax lien attached after that date, thereby rendering the equitable lien superior. This argument is unpersuasive. Petitioners have overlooked the fact that the city’s tax lien was actually perfected on December 21, 1977 — the date that the New York City Department of Finance filed a notice of intent to claim against fire insurance proceeds. As of that date, each insurer was given constructive notice of the tax district’s claims against insurance proceeds. Since petitioners’ equitable lien was recorded subsequent to the perfection of the city’s lien, the city has superior rights to the check. A similar decision was reached in Kovacs v New York Prop. Ins. Underwriting Assn. (supra). There, the court held that where the lien of New York City was perfected on December 22, 1977 and the mortgage of the plaintiff was recorded on December 23, 1977, but plaintiff was not named as beneficiary in the fire insur *413 anee policy, the city shall have priority to the proceeds of the policy over the subsequently recorded equitable lien.
CONCLUSION
The city’s special tax lien is superior to the equitable lien of petitioner mortgagees regarding the fire insurance proceeds. The explicit terms of the General Municipal Law, Insurance Law and the Administrative Code subordinate this type of tax lien to a mortgagee’s lien only when the mortgagee is named in the fire insurance policy. That prerequisite does not exist here.
Accordingly, this article 78 petition is dismissed. Respondent city’s counterclaim is granted to the extent that the $18,000 payment should be made to the City Collector of the City of New York.

. Insurance Law § 331 (d) provides, in part, "Upon a final determination of an insurer’s obligation to pay any proceeds of a policy of insurance for damages caused by fire to real property * * * and prior to payment of such proceeds, each insurer * * * shall notify the enforcing officer of each tax district in which the property is located * * * that a loss has been sustained and demand in writing * * * that such officer’s certificate indicating the amount of all liens of the district against the property, including interest and penalties to the date of the certificate, be served * * * upon the insurer * * * within twenty days from the date of receipt of such demand.”
Insurance Law § 3410 states: "Every fire insurance policy * * * shall include a statement that, prior to the payment of any proceeds thereunder otherwise payable to the insured for damages resulting to the premises from a loss occasioned by fire, the insurer will deduct and pay the claim of any tax district which renders a certificate of lien pursuant to the provisions of three hundred thirty-one of this chapter.”

. Administrative Code of City of New York, title C, § C17-2 states: "The commissioner (of Finance) shall file a notice of intention to claim against the proceeds of fire insurance policies pursuant to section twenty-two of the general municipal law with the State superintendent of insurance for entry in the index of liens maintained by him.”
Section C17-3 provides: "Prior to the payment of any proceeds of a policy of insurance for damages caused by fire to real property * * * located within the city and following notification to the commissioner by an insurer of the filing of a claim for payment of such proceeds, the commissioner shall claim, by serving a certificate of lien, against such proceeds to the extent of *409 any lien (including interest and penalties to the date of the claim) thereon, which claim when made and perfected * * * shall constitute a special lien against such proceeds and shall, as to such proceeds, be prior to all other liens and claims except the claim of a mortgagee of record named in such policy.”

. General Municipal Law § 22 (2) states: "Every tax district is hereby authorized and empowered to claim against the proceeds of a policy of fire insurance insuring the interest of an owner on real property * * * to the extent of any lien thereon which claim * * * shall further constitute a lien against such proceeds and which shall, as to such proceeds, be prior to all other liens and claims except the claim of a mortgagee of record named in such policy.”